Our final case for today is case number 416-0720 and that is in re The Marriage of Hundley. For the appellant we have Mr. Graham and for the appellee we have Mr. Erickson. This matter was brought to assess a statutory penalty that's imposed upon a payor of a support obligation, an employer, of a an obligor when they fail to abide the terms and conditions of an income withholding order. The trial court denied that relief to the obligee, Sally Hundley in this case, and we believe that the trial court's reasoning in that regard was flawed. We also believe that because it's a slightly different argument that's made by the defendant, the employer, their argument is similarly flawed. Sally's argument in support of this is really pretty simple and straightforward and it was when we presented it to the court also, trial court also. The statute, the Income Withholding Act in Illinois, really only imposes one burden on the payor of support, the person who receives the income withholding order. And that burden is to, once they receive the income withholding order, to withhold and pay over. And there are time limits during which they must do that. I believe it's 14 days that they have before they have to make the first withholding and then they have to pay over within seven days after that. But the obligation is simple. It's withhold and pay over. Now, it's undisputed in this case that Buckhart, Sand and Gravel, the employer, received the income withholding order. It's undisputed in this case that they actually withheld payment pursuant to the terms of the income withholding order that they received. It's similarly undisputed in this case that they did not pay over the support that they withheld. They retained it in their own accounts for whatever benefit that would provide to them. It's likewise undisputed in this case that the plaintiff, having not received that support for a period of time, sent the statutorily required notice to the employer, the payor in this case, requesting, identifying the fact that there hadn't been a payment made and requesting that they either pay the support that was due or provide some explanation as to why they couldn't pay it. It's undisputed in this case that Buckhart, Sand and Gravel, after the request was made, support was retained, withheld by the employer, and not paid over. And for at least 15 additional payroll periods after that notice was sent, the support was again withheld by the employer but retained and not paid over. Based on the statute, Buckhart, Sand and Gravel was liable for the statutory penalty that would have been imposed because of its complete failure to abide by what the statute requires and what the income withholding notice required. That's the pitch we made to the trial judge. The trial judge took a slightly different tack when she analyzed the situation. And her analysis of that situation to abide by its terms, even though it actually had abided by its terms. In this case, the trial judge took a look at the situation and said, well, there wasn't a support order that was entered at the time that would have justified this income withholding order. Therefore, the income withholding order itself was invalid and couldn't be enforced. Now, that analysis by the trial judge fails for a number of different reasons. The first one is, there was a support order in place. The support order had been in place since November of the year prior, November of 2015. But the support order wasn't to be activated, Jess. I guess that's the best way I can put it in terms of it was conditioned on a certain time period he would start paying a certain amount, correct? I think once the home sold or something like that? Partially correct. The support order was a two-faceted situation. Mr. Hundley was supposed to be making payments to satisfy some debt obligations that the parties had. And he was to make those payments on a periodic basis at all times after November of 2015. And up until the time that the house residents' real estate that they owned was sold, the proceeds were paid out. And then those proceeds were to be used to pay off all of that marital indebtedness. And at that point in time, he would be paying a fixed sum of money, which was $300 and whatever number of dollars it is that's identified in the judgment. And he would pay that amount going forward. But he would pay an amount of money that was equivalent to that before, and he paid that amount of money after. The obligation was basically the same before and after the house was sold. What happened in this particular case was the house was placed for auction under the terms of the divorce judgment. It was set to be, I keep saying the house, it's the house in 40 acres, was set up for auction. And during that period of time, Mr. Hundley did not pay a support obligation. I don't have an explanation as to why he didn't pay the support obligation. I just know he didn't pay the support obligation. Now, is that a record? Yes, well, it is a record. I mean, is this for the appeal? It would be, yeah, I think you got the record of the entire divorce case, if that's the case it is. Well, generally speaking, if we got it for the entire divorce case, what would be in the record that would let us know that after the case ended, payments weren't made? I mean, that would usually come from like a petition for contempt or something that really wasn't part of the original proceeding. I know it's part of the record because it's something that we argued to the court at the time, and we made reference to it all during the course of this litigation. He did not make any payments of support prior to January 1 of 2016. So he wasn't making those payments regarding the bills is what you're saying? No, he wasn't making any payment of any benefit at all. In August, towards the end of August of 2015, the house was in fact sold at auction. Now, it was anticipated because there were a number of factors that we had to accomplish with respect to the lenders, these parties' lenders, in order to get liens cleared so that we could pass merchantable title on to the purchaser. We anticipated that the closing of that real estate transaction was going to take place shortly before January 1, 2016. And both of the parties and both of their attorneys were in on the notion that that was going to be the termination date of the prior obligation of support and where we were going to start collecting the sum certain that was identified in the original support order. So you're saying that the order for withholding was really sent by agreement, that everyone was on the same page that it would start? Everybody was on the same page. And is that a record? Well, it is because Mr. Hundley never objected to it. Was that presented to the trial court at some point? Well, it's part of the trial court's record that he did not object to it. So you went to court and discussed that we're going to start this in January because we anticipate that the home will be sold and will be ready? We had that discussion in court, yes. Okay. And we have a transcript of that? You don't have a transcript of that. What you have is a record that indicates that he did not make an objection to the withholding order. Okay, you mean after you sent it, not something like in court, but just, I see what you mean. On December 9th, when we served the withholding order, we served a copy on him and we provided a copy to the court and all that kind of stuff. Well, we didn't provide a copy for filing with the court because it's not required until such time as it's necessary. And in this case, it didn't become necessary to file that until a later date when these issues came up. But he was served with a copy of the withholding notice and he didn't make any objection to it. And I think that is a keenly important point in determining whether or not anybody owed an obligation of support here. Because your opinion is, you're arguing that the remedy is to object, not to have the employer... And it's his remedy to object, not the employer's remedy to object. The employer's obligation when they receive the notice, the income withholding notice, is to withhold and pay over. Now, if during that process, the employer determines that there's a deficiency between the terms and conditions of the withholding order and whatever it is that the support obligation was supposed to be, their obligation, they may or may not have an obligation to their employee. There isn't one that's identified in the statute, but maybe morally they have an obligation to their employee to say something one way or the other. But it's the employee's obligation to do something about it if that's what has to be done. Now, in this case, none of that happened because Mr. Hunley didn't object. In fact, I know just as a matter of the proceeding, Mr. Hunley didn't want to object because the alternative was he was going to be held in contempt for not paying support. So he anticipated that the money was going to be withheld, and he didn't object to his employer when they started to withhold it. When was the money in fact paid? The money wasn't in fact paid until the end of May or the first of June of 2016. And the dates of that are in my brief. I don't know them right off the top of my head. I believe it was... So Mr. Hunley, had he been paying some... making payments prior to the entry of the order? No. No, Mr. Hunley never paid a support obligation at any time, personally. But starting on January 1, 2016, his employer started withholding the money. And that was pursuant to the... To the withholding order. The marital settlement agreement from August? Yes. So, Buckhart, Sand and Gravel commenced to withhold the money. But they didn't pay it over. And as a consequence, they didn't... They placed all these parties in a very difficult position. They placed Mr. Hunley in a difficult position because people were looking to him for payment of the support obligation, which he had already paid because it was being withheld by his employer. They placed Mrs. Hunley in a difficult position because every time she went to Mr. Hunley and said, where's my support, he says, they're withholding it. So, it's a catch-22 that the employer created by not paying the money over. Not something that was created by anybody else in this process. And again, I think the primary concern with the judge's position in this matter is that the money was actually... Buckhart, Sand and Gravel actually honored the income withholding notice. It's not as though they contested it. It's not as though they ever brought it to anybody's attention. If we agree with you, what remedy are you seeking from this court? The remedy that we're seeking from this court is that the matter be reversed and then remanded back to the trial court with direction that they assess the penalty. What penalty would that be? The penalty is the $100 a day penalty for failing to withhold and pay over. How much would that total? I believe at the time that they paid the balance of the arrears, it was $147,800. That seems pretty severe for what looks like an oversight by people who don't really know what they're doing. Well, there's two responses to that. One of them is it is severe. And it's severe for a reason. It's severe to make people, employers in this case, not do this. And the appellate courts of this state and the Supreme Court of this state have made that determination in the past that even though the penalty is severe, it's not something that shouldn't be considered in cases where the employer doesn't do what they're supposed to do. I know there's another reason why I said that, because I told you there were two. Right off the top of my head, I'm not thinking about what the other, but the bottom line is they didn't do what they were supposed to do under the circumstances. And that is the penalty that's imposed as a result of it. Speculate for me. Why do you suppose they didn't? Purely speculation. That's what I'm asking. The thought that I've had all along is that there was communication between the employee and the employer during that period of time, and the employee didn't want them to pay the money over to kind of screw his wife. That's my thought. It's a small company. Everybody knows everybody else. Me, personally, I think they were doing it unintentionally to create a hardship on Mrs. Hundley. But obviously that's just your speculation. That's just my speculation. But it is odd that they withheld it but didn't pay it over. Well, and Judge, what's more odd than that is that we communicated with them on a number of occasions and formalized that when we sent them a notice on February 16th and said, wait a minute, we haven't received any money. And what we're asking you to do is one of two different things. Both of them are required by the statute. Either pay us the money you owe us or tell us why you're not paying it. Just do something and tell us what to do. What response did you get? Zero. We got zero response. We had zero response until the day we filed the complaint. And the day we filed the complaint, we started getting telephone calls from Buckhart, Sand & Gravel. That day. Saying? Saying what? Oh, gosh, we screwed up. So our thought with respect to the court's order is this isn't an issue that relates directly towards whether or not there was a support order or not a support order. Because that's not for Buckhart, Sand & Gravel to make a determination on. If they start, if employers start being able to have a right to inject themselves and their interests into family law decisions that relate to whether or not and when support ought to be paid, we've got a problem. And really they're out of nothing when they comply. Because they're taking the money from the employee and they're turning it over to the person who's entitled to the money. And if they do that, they're out of nothing. Nothing. It's a wash to them. They're just withholding the money and paying it to wherever it is it's supposed to go. And in this case, they took the money and they held on to it. Now, I know that there are cases that have been decided in this, not in this court, but in other appellate courts in this state where that issue has been adjudicated as to what the use of the money, what use was the money put to during the period of time that the company was actually holding it and not paying it over. We're not raising that issue here. I don't know what they did with it or why they did what they did with it, but they have admitted continuously throughout the course of this process that when they received the income withholding order, they withheld the money. And they have admitted continuously throughout this process that when they withheld the money, they didn't pay it over. And they have admitted throughout this process that once they got our notice, they ignored it. Now, there are other arguments that have been made that weren't, and again, I don't believe that the court was correct in trying to assess what responsibility the employer has for determining whether or not a support obligation exists. I think the statute is very clear. The statute identifies the entire process for how this matter is supposed to go, and that process is withhold and pay over. And do that until a court or another income withholding order tells you to do differently. And they didn't do that. Now, what Buckhart, Sand and Gravel proposes as their position in this is that the order itself, the income withholding notice itself was insufficient in that it did not contain a copy of the judgment that established the support obligation. And I will consent to you that it did not contain that. Does the statute require that? The statute does not require that. Now, what the statute requires, in fairness to everybody, the statute requires that we use a federally mandated form. And the form contains in two different places, one on the first page and one on the second page, reference to the fact that the income withholding order must be regular on its face. And to be regular on its face, it identifies on the very first page that if this is issued by an attorney, it needs to contain a copy of the judgment establishing the support order. Now, it doesn't provide any other direction there other than to say that they are to honor the order if it's regular on its face. But when you turn the page and go to the second page of that instrument, there is a specific paragraph there with a little checkbox on it that says return to sender. That if the employer receiving this income withholding order notices that it is not, quote, regular on its face, close quote, and in this particular case, doesn't contain a copy of the underlying judgment, their obligation is to check that box and return it to the sender. Now, I think that's a conflict with Illinois law. But Illinois law says you're supposed to use that form. So I assume that they were to do what the employer's obligation was to do whatever the form told them to do under those circumstances. In this case, not only did they have, well, when they received the order, if they reviewed it, they saw that it was not regular on its face because it didn't contain a copy of the underlying order. Whether that's mandated by Illinois statute or not, that's what they saw. When they flipped the page, they would have seen there's a place for them to check a box and say, okay, if this isn't regular on its face, I've got to send it back. Check the box, put it in the mail, send it back to E.T. Graham, Jr. in Taylorville, and E.T. Graham, Jr. is obviously going to pick up the phone, call you and say, why did you send this back to me? Well, it doesn't have a copy of the judgment attached to it. Well, all right, I'll send you another one. But they didn't do that. They didn't do anything. They didn't respond to that issue, and they didn't respond to our notice of non-receipt when we sent it in February. They ignored all those things completely. And the defenses that they raise now about the order not being regular on its face have only been raised since this lawsuit was pending. Now, the only way I think conveniently and realistically to sort through all this thing is to follow what the statute says is supposed to be done under these circumstances. And what the statute provides relative to the employer is that when they receive an income withholding order, they're to withhold the money and pay it over. And if they're not going to pay it over, they've got to tell somebody why we're not paying it over. In this case, they didn't do that. And they not only didn't do it when they got the income withholding order, they didn't do it when they received the notice that said, something's screwed up here. This is wrong. We're not receiving the money. If you're not sending it to us for a reason, tell us what the reason is. Otherwise, send us the money. And they ignored that. And they ignored that for twice as long as they ignored it before they got that notice. Counsel, you're out of time. We'll have additional time on rebuttal if you so desire. Thank you. Thank you, Your Honor. Mr. Erickson. Distinguished members of the court, I've introduced myself before, but I'm Steve Erickson. This is my colleague, Ashley Keene. We're here today on behalf of Buckhart Sand & Gravel, a third-party defendant and the appellee in this matter. The overarching issue before the court for de novo review is whether Judge Archer's Rule 2619 dismissal of this case was proper. And the interpretation here of the court is based upon some very clear readings of the income withholding statute, which is 75028 headset. And as we look at the definitions that are contained in that statute, it helps us to understand what the role of each of these parties are and how the obligations under the statute create it. To get to the very end of this, and I will go to those definitions, but the very end of this is that Buckhart is not a payor and is therefore not subject to any of the provisions of the income withholding statute. And specifically, in our instance, is not susceptible to having penalties placed against him. So if you go and you look at the basic. Why aren't they a payor? Why aren't they a payor? The basic reason that they are not a payor is that 2815G defines a payor as a payor of income to an obligor. So we next have to look. Is there an obligor in this situation? And arguably, that would be Mr. Hunter. 2815E defines an obligor as an individual who owes a duty to make payment under an order of support. So now we have to ask ourselves, was there an order of support? That too is defined by the statute at 2815A. An order of support means any order which provides for periodic payment of maintenance of a spouse. Clearly, in this instance, what we're talking about is, was there an order of support for maintenance of this spouse? And in order for us to come to an understanding of whether there was an order of support and in the way that the court looked at it, Judge Archer looked at it, was to look at the dissolution order, which incorporated by reference the parties' separation agreement. And in that separation agreement, it quite specifically said in 3.2.2, I'm sorry to read these things to the court, but they're specific in their language, 3.2.2, it says, on or after the first day of the month, the next following the sale of the party's farm, real estate, located in rural Rochester, Illinois, and the distribution of the proceeds of the sale thereof, then otherwise set forth herein, the husband shall pay to the wife the sum of $370 per month. Well, counsel, this is an interesting and innovative argument on a construction of the order and what it all means, but isn't it totally inconsistent with the purpose behind this statutory provision, which says essentially we're real concerned that people get child support payments, these kinds of orders, and if you're the obligor and you think there's a problem with it, you have to take immediate action to see to it that this matter isn't left hanging. Well, I would agree that one of the purposes of the statute is that, but a purpose of the statute is not to allow somebody to come forth and issue an income withholding statement on a false premise. And that's what happened here. Now, wait a second. Here's the problem with that argument. What's your interest? You're the employer, Mr. Hunley, so instead of giving him his $365, you withhold it for disbursement to this agency that's supposed to be receiving it, and you tell Hunley, by the way, we're taking this money out of your check because we have this order. This is essentially a push for you, and if there's a problem with it, if the order is premature, if the order isn't legitimate, if there's any problem at all, it's his burden to say, wait a minute, this ain't right. But you didn't do that. We still, in order for there to be a penalty assessed in this situation, then this statute has to apply to us. And this is what the court concluded, and this is what we argue to this court, is that we were not a payor. We, therefore, are not subject to the penalties of this statute. Based upon this interesting analysis going into checking to see whether the withholding order is supposed to take place, and this is allegedly a premature order, a premature action based on that order. That is correct. Do you suppose the legislature expected for obligors to be called upon to analyze the underlying orders to see whether or not they're legit? Well, I believe that the legislature intended for people who were not subject to the statute to have penalties imposed against them. Say that again. I didn't understand your answer. I don't believe that the legislature intended that this statute have the power to impose penalties against people who were not subject to the statute. Well, that's begging the question. Are you subject to the statute? It seems to me the entire legislative purpose here is to put an obligor into two roles. One, withhold the money and forward it, or two, turn to the payor and say, is this legit? And that's it. Well, I disagree for the reason that what is being asked for here today is the imposition of a penalty and not just some small penalty. Now, that's not what's being asked for. What's being asked for is to reverse the trial court holding that you weren't an obligor and then remand for further proceedings. And if you want to argue about the penalty before the trial court, to go ahead and do that and to present whatever arguments or equity arguments you want to present to the trial court on what penalty to impose. Our only question here today is were you an obligor under that statute in the trial court era by holding your word? We, Buckhart, was not an obligor. By definition, we were not an obligor. The best that we could have been would have been to have been a payor. And our obligation as a payor is based upon the question, does the obligor have a duty to make a payment under an order of support? And you clearly do unless you go through this and analyze it and figure out the time under the marital settlement agreement to see was this arguably premature. But for that, you would clearly be required, wouldn't you? Well, if there were an order of support, if there were an order of support, we would have had an obligation, okay? Are you challenging that there was not an order of support? I am challenging that there – I am suggesting – It wasn't effective yet. Is that your claim? The condition precedent as determined by the trial court had not occurred, which created the order of support. So, therefore, there was no order of support. The condition precedent was the sale of the property. And thereafter, after not only the sale of the property, but the distribution of the proceeds thereafter, then we were to – he had an obligation. That's when he became an obligor. That didn't happen. If the legislature intended for the obligor to not only have the opportunity, but indeed the responsibility to check the underlying support order to see if it's legit, why didn't they require – why didn't the legislature require that the support order, in all instances, be attached to the proposed payment order? Well, it certainly is suggested in supporting white papers that it be attached. But more than that – Is it in the statute? Does the statute require – I'm sorry, within the income withholding order. The income withholding order is before here. And it's in the court file. It was before the trial court. The income withholding order in this instance was issued by Mr. Graham. And he admits in his brief that it was in anticipation of the sale of the property. The property hadn't even been sold. He knew that. Today he's here saying that your client – well, I'm sorry, not your client, your employee had not been paying as ordered, as previously ordered, and that your employee did not object to the order for withholding and, in fact, agreed that that would be taking place and would be coming forward. No, I disagree with that representation. Were you there? In the – was I there? In the trial court when – I was not. Or when they addressed the issue of that he hadn't been paying.